Cowin, J.
The plaintiff PNC Bank, N.A. (Bank) has moved for partial summary judgment on the issue of the liability of the defendant T Cell Sciences, Inc. (T Cell) to the Bank under a Tri-Party Agreement between the Bank, T Cell and the landlord, Forest City 39 Sidney Street, Inc. (Landlord or Forest City). The Bank seeks to recover the amount it claims is owed under the Tri-Parly Agreement and also seeks a declaration that T Cell is to pay the Bank the amounts that would otherwise (but for any defenses or set-offs, including the defense of “constructive eviction”) be due from T Cell under its lease with Forest City, without regard to such defenses or set-off.

BACKGROUND

In 1987, T Cell sought to lease and occupy a building to be built in Cambridge. The prospective landlord, Forest City, held a ground lease to the land on which the building was to be constructed.[1] Forest City was to build in accordance with T Cell’s business needs. The two parties entered into a lease (Lease) pursuant to which T Cell was to occupy the fourth and fifth floors of a five-story building to be built at 38 Sidney Street, Cambridge. Said construction was to cost several million dollars and Forest City sought a loan for this purpose.
After a period of negotiations, the three parties (the Bank, T Cell and Forest City) signed the Tri-Party Agreement in June, 1988; the Bank advanced eighteen million dollars for the construction of the building, and, after the building was built, T Cell moved in. Problems of air quality and leaks in the building eventually caused T Cell to move out claiming it had been constructively evicted. T Cell stopped paying rent. The Bank demanded that T Cell make rent payments directly to the Bank. T Cell refused and the instant lawsuit was begun by the Bank. -■

DISCUSSION

The Bank relies on the following provision of the Lease:
Tenant acknowledges that it has no right to withhold any rent or sums otherwise payable under the Lease by virtue of any default or alleged default by Landlord thereunder.
Other relevant provisions are in paragraphs 4 and 8(g). Paragraph 4 states:
Landlord and Tenant agree with Lender that Tenant shall make all payments to be made by Tenant under the Lease to Lender upon receipt of written notice of the exercise of such rights, and, except for the then current month’s rent, Tenant shall not prepay any sums payable by Tenant under the Lease.
Paragraph 8(g) provides:
[T Cell] will, after written notice from Lender, and without offset or defense, pay to Lender, or to such person or firm designated by Lender, all rent and other monies due and to become due to Landlord under the Lease; . . .
T Cell relies on the fact that the Lease terms require it to pay the Bank only “all rent. . . due to the Landlord under the Lease.” T Cell argues that since it has been constructively evicted, no money is due the Landlord and thus no money is due the Bank.
The ambiguity in the language precludes summary judgment. The Bank’s position that T Cell was promising to pay rent even should it no longer be a tenant is an unusual arrangement, sufficiently unusual that it appears that it would have been specifically documented by language other than simply the terms “all payments due under the Lease." The parties to the Tri-Parly Agreement were all sophisticated business people and the current problem is one easily foreseeable by professionals who routinely draft leases, assignment and loan documents. If an assignment of rents by T Cell, the tenant, was intended even when T Cell was no longer a tenant because of the fault of the Landlord, veiy specific language would be advisable in order to effectuate such an intent. Such language is not found in the Lease; the only language is thatT Cell is to pay the Bank the rent due the Landlord. A strict interpretation of that language supports T Cell’s position that no payments are due because there is no longer a lease. Because of the ambiguity in the language the taking of evidence is required to ascertain the intent of the parties.

*350
ORDER

For the above reasons, the motion for partial summary judgment of the plaintiff PNC Bank, N.A. (Bank) is DENIED.

 Nhe land is owned by the Massachusetts Institute of Technology, which entity apparently is not involved in this dispute.